DVM

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KATHLEEN PARKER | : | |
| | : | |
| v. | : | C.A. NO. 07- |
| | : | |
| DANIEL HALPERN-RUDER, M.D. and URGENT MEDICAL CENTER OF SMITHFIELD, INC.; URGENT MEDICAL CENTER OF CUMBERLAND, INC. and WARWICK URGENT CARE PARTNERS, INC. d/b/a STAT CARE-WARWICK MEDICAL | : | CA 07 401S |

## COMPLAINT

NOW comes the Plaintiff, Kathleen Parker, and hereby brings this action against Defendants, Daniel Halpern-Ruder, M.D., Urgent Medical Center of Smithfield, Inc., Urgent Medical Center of Cumberland, Inc. and Stat Care-Warwick Medical and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, Kathleen Parker ("Parker" or "Plaintiff"), at all times material hereto, was a resident of the State of Rhode Island, with an address in West Warwick, Rhode Island. Plaintiff is a registered nurse practitioner with extensive experience in occupational health care.

2. Defendant Daniel Halpern-Ruder, M.D. ("Halpern-Ruder"), at all material times hereto, was a resident of the State of Rhode Island.

3. Defendant, Urgent Medical Center of Smithfield, Inc. (hereinafter ""Urgent Smithfield"), is a corporation organized and existing under the laws of the State of Rhode Island and has a principal place of business in Smithfield, Rhode Island. Upon information and belief, Halpern-Ruder is the President of Urgent Smithfield.

4. Defendant, Urgent Medical Center of Cumberland, Inc. (hereinafter "Urgent Cumberland"), is a corporation organized and existing under the laws of the State of Rhode Island and has a principal place of business in Cumberland, Rhode Island. Upon information and belief, Halpern-Ruder is the President of Urgent Cumberland. Urgent Smithfield and Urgent Cumberland are collectively referred to herein as "Urgent."

5. Defendant, Warwick Urgent Care Partners, Inc. d/b/a Stat Care-Warwick Medical (hereinafter "Stat Care"), is a corporation organized and existing under the laws of the State of Rhode Island and has a principal place of business in Warwick, Rhode Island. Upon information and belief, Halpern-Ruder is the President of the Defendant.

6. Jurisdiction of this Court is proper under 28 U.S.C. §1331 and 28 U.S.C. § 1367. Plaintiff asserts claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. and supplemental state law claims related to the same case and controversy.

**FACTUAL BACKGROUND**

7. On or about 1997, Parker began working for Halpern-Ruder and Urgent Smithfield as a registered nurse practitioner. Her primary responsibilities were focused on managing, soliciting and servicing occupational health services clients. Parker was also responsible for training nurse practitioners in performing pre employment physicals, drug screenings, immunizations and other occupational health services.

8. Halpern-Ruder offered Parker an equity interest in Urgent Smithfield if she would work as his employee, developing, servicing and managing the occupational health services side of the business for five years and working to expand its general business.

9. Parker accepted Halpern-Ruder's offer and worked faithfully, skillfully and diligently for Urgent for the next five years, contributing substantially to the growth and success of the business, particularly by soliciting, managing and servicing corporate clients in need of pre employment occupational health services. Parker's efforts also substantially contributed to the growth of the workers' compensation side of the business.

10. Parker's efforts conferred a substantial and appreciable benefit upon Urgent Smithfield, enabling and facilitating the expansion of Halpern-Ruder's urgent medical care business to Urgent Cumberland. When Urgent Cumberland was opened, Halpern-Ruder extended and reiterated his agreement to give Parker and equity interest in both Urgent Smithfield and Urgent Cumberland if she continued her employment soliciting developing and managing the business.

11. In reliance upon Halpern-Ruder's renewed agreement, Parker continued to work faithfully, skillfully and diligently for Urgent for the ensuing years, contributing substantially to the growth and success of the business.

12. Parker's efforts also secured occupational health services clients for Stat Care.

13. In reliance upon Halpern-Ruder's agreements that her efforts were being accrued toward equity in Urgent's business, Parker did not pursue more lucrative employment opportunities, did not take her allotted vacation time, sick time or personal

time, worked substantial overtime for no compensation and received no bonuses or commissions for her contributions to the business.

14. Apart from her first year of employment, Parker received an hourly wage for a forty hour week as compensation for the various nursing, management and administrative services she performed on behalf of Halpern-Ruder and Urgent.

15. When Parker requested overtime for the substantial hours worked in excess of forty (40) hours per week during the term of her employment, Halpern-Ruder consistently and repeatedly refused to pay her overtime compensation. In addition to the extra hours working at Urgent's premises, Parker was often on call, worked on accounts at home and spent considerable hours servicing clients at their places of business.

16. Annually, in the spring of each year she was employed by Urgent, Parker discussed her compensation and the agreement to give her an equity interest Urgent's business in exchange for her continued services with Halpern-Ruder. Halpern-Ruder refused to give Parker her equity interest, citing to financial constraints. Nevertheless, in each discussion Halpern-Ruder confirmed and renewed his agreement to give Parker an equity interest in Urgent if she continued to manage, service and develop the occupational health services business and the other aspects of Urgent's business.

17. In reliance upon Halpern-Ruder's continued promises and agreements, Parker did not seek more lucrative employment elsewhere, and did not pursue additional benefits from Urgent, but continued working for Urgent and Stat Care under the same terms, with the understanding that her extra efforts were accruing equity in the business.

18. Halpern-Ruder's statements to Parker were false, and made with the specific intent to deceive Parker to induce her to remain with Urgent so that he could continue to exploit her talents and expertise in soliciting, managing and servicing the occupational health services clients, as well as Urgent's other medical business.

19. Halpern-Ruder's statements did in fact deceive Parker and induced her to remain at her employment with Urgent, and subsequently with Stat Care.

20. Parker terminated her employment with Urgent and Stat Care in October 2006, but remained on staff until December 2006.

21. Despite numerous demands, Halpern-Ruder and Urgent has failed, refused and neglected to give Parker her an equity interest in Urgent.

22. Despite numerous demands, Halpern-Ruder and Urgent has failed, refused and neglected to pay Parker overtime compensation for the hours she worked for the benefit of Halpern-Ruder, Urgent and Stat Care.

**COUNT I**
**(Fair Labor Standards Act 29 U.S.C. § 201 *et seq.*)**

23. Plaintiff realleges and incorporates by reference paragraphs 1 through 22 of her Complaint as if fully set forth herein.

24. Apart from her first year of employment with Halpern-Ruder, Parker was paid and hourly wage by Urgent and Stat Care.

25. Over the course of her employment, Parker worked substantial hours in excess of forty (40) hours a week for which she was not paid compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA")

26. Defendants Halpern-Ruder, Urgent and Stat Care willfully violated the statute, as they acted knowingly or in reckless disregarded of the requirements of the FLSA and in disregard of whether or not their conduct was prohibited by the FLSA.

27. Defendants willfully violated the FLSA, such that Parker is entitled to liquidated damages in the amount of unpaid overtime, as well as attorney's fees and costs.

**COUNT II**
**(Breach of Contract - Equity Interest)**

28. Plaintiff realleges and incorporates by reference paragraphs 1 through 27 of her Complaint as if fully set forth herein.

29. Parker and Halpern-Ruder entered into an agreement whereby in exchange for Parker's expertise and efforts in managing, soliciting and servicing the occupational health services clients, as well as other tasks directed toward expanding Urgent's business, Halpern-Ruder would give Parker an equity interest in Urgent's business.

30. Halpern-Ruder possessed the actual or apparent authority to bind the Defendants to this obligation.

31. Parker performed her part of the agreement, working overtime, foregoing allotted vacation time, holidays, personal days and sick time and devoting considerable time and energies to successfully expand Urgent's business.

32. Halpern-Ruder and Urgent breached its contract with Parker by failing to give her an equity interest in Urgent.

33. As a direct and proximate result of Defendants' breach of contract, Plaintiff has sustained substantial monetary and other consequential damages, including, but not limited to, the value of an equity interest in Urgent, attorney's fees and litigation costs.

**COUNT III**
**(Estoppel)**

34. Plaintiff realleges and incorporates by reference paragraphs 1 through 33 of her Complaint as if fully set forth herein.

35. The actions, conduct and communications of Halpern-Ruder, who was the agent of Urgent and Stat Care, constituted a promise by the Defendants to give Parker an equity interest in Urgent.

36. Halpern-Ruder possessed the actual or apparent authority to bind the Defendants to this obligation.

37. Halpern-Ruder had a reasonable expectation that Plaintiff would rely upon said statements and promises.

38. Said conduct was directed to Plaintiff for the purpose of inducing her to act or fail to act in reliance thereon.

39. Plaintiff actually and reasonably relied upon said statements and promises to her detriment such that, among other things, she did not seek alternative employment and agreed to forego bonuses, commissions, overtime, all allotted vacation time, holiday time, sick time and other benefits.

40. Defendants' conduct and representations did induce Plaintiff to act or fail to act in reliance thereon, proximately causing her injury.

41. As a direct and proximate result of Defendants' conduct and representations, Plaintiff has sustained substantial monetary and other consequential damages, including, but not limited to, the value of an equity interest in Urgent, lost opportunities and benefits, attorney's fees and litigation costs.

**COUNT IV**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

42. Plaintiff realleges and incorporates by reference paragraphs 1 through 41 of her Complaint as if fully set forth herein.

43. Under the terms of their employment agreement with Parker, Defendants owed Parker a duty of good faith and fair dealing to perform their obligations to give Parker an equity interest in Urgent for the substantial services she rendered in managing and soliciting business for the benefit of the Defendants.

44. Defendants have failed, refused and neglected to give Parker an equity interest in Urgent.

45. Defendants have breached their duty of good faith and fair dealing to faithfully perform their obligations to Parker by failing to give Parker an equity interest in Urgent.

46. As a direct and proximate result of Defendants' breach of their duty of good faith and fair dealing, Parker has sustained substantial damages, including, but not limited to, compensatory damages for lost wages and opportunities, loss of the value of the equity interest in Urgent, attorney's fees and litigation costs.

**COUNT V**
**(Fraudulent Inducement)**

47. Plaintiff realleges and incorporates by reference paragraphs 1 through 46 of her Complaint as if fully set forth herein.

48. Defendant Halpern-Ruder represented to Parker that he would give her an equity interest in Urgent in return for her continued employment managing, soliciting and servicing the occupational health services clients, as well as other tasks directed toward expanding Urgent's business.

49. Halpern-Ruder made these statements with the actual or apparent authority to bind the Defendants.

50. Halpern-Ruder repeated these statements to Parker on an annual basis, in the spring of each year she was employed, when the subject of her compensation and the terms of her employment were raised by Parker.

51. Halpern-Ruder consistently and repeatedly represented to Parker that if she continued to work for him, her efforts and expertise would accrue toward equity in Urgent and that she would receive an equity interest in Urgent.

52. These statements were fraudulent when made and were made by Halpern-Ruder with the intent to induce Parker to continue her employment with Urgent, to decline to seek alternative employment, and to forego bonuses, commission, overtime and other benefits.

53. Parker reasonably relied upon Halpern-Ruder's representations concerning the equity interest in Urgent in deciding to continue her employment with Urgent and to refrain from seeking other benefits from Urgent.

54. As a direct and proximate result of Halpern-Ruder's fraudulent misrepresentations and fraudulent inducement, and the acts and /or omissions of Defendants, Plaintiff has sustained substantial monetary and other consequential damages, including, but not limited to, the value of an equity interest in Urgent, lost opportunities and benefits, attorney's fees and litigation costs.

**COUNT VI**
**(Specific Performance)**

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 53 of her Complaint as if fully set forth herein.

56. Parker and Halpern-Ruder entered into an agreement whereby in exchange for Parker's expertise and efforts in managing, soliciting and servicing the occupational health services clients, as well as other tasks directed toward expanding Urgent's business, Halpern-Ruder would give Parker an equity interest in Urgent's business.

57. Halpern-Ruder possessed the actual or apparent authority to bind the Defendants to this obligation.

58. Parker complied with all of her obligations under the terms of their agreement, working overtime, foregoing allotted vacation time, holidays, personal days and sick time and devoting considerable time and energies to successfully expand Urgent's business.

59. Defendants have failed, refused and neglected to transfer to Parker an equity interest in the Urgent.

60. Parker is entitled to specific performance of the agreement, such that Defendants must be required to transfer ___ per cent equity interest in Urgent to Parker .

**COUNT VII**
**(Breach of Contract - 401k Plan)**

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 of her Complaint as if fully set forth herein.

62. One of the terms of Parker's employment with Urgent was the funding of a qualified 401k plan on her behalf, which would result in certain tax benefits.

63. Defendants failed, refused and neglected to properly fund and qualify the 401k plan under Internal Revenue Service rules and guidelines.

64. Defendants breached their contract with Parker by failing to to properly fund and qualify the 401k plan under Internal Revenue Service rules and guidelines.

65. As a direct and proximate result of Defendants' breach of contract, Parker has sustained substantial damages, including, but not limited to, the negative tax consequences and contributions lost because the 401k plan was not qualified, attorney's fees and litigation costs.

**COUNT VIII**
**(Unjust Enrichment)**

66. Plaintiff realleges and incorporates by reference paragraphs 1 through 65 of her Complaint as if fully set forth herein.

67. From 1997 through October 2006 Plaintiff performed services and continued her employment with Defendants in reasonable reliance upon representations made by the Defendant Halpern-Ruder that she would receive an equity interest in Urgent's business.

68. Parker's additional efforts, expended without compensation and her expertise in soliciting, managing and service business for the benefit of Urgent and Stat Care, inured to the benefit of the Defendants. Defendants commercially exploited Parker by accruing susbtantial benefits for their business without compensating Parker.

69. Defendants have failed, refused and neglected to pay Plaintiff Parker for the value of the substantial services rendered and customers solicited and managed by the Plaintiff on their behalf.

70. As a direct and proximate result of Defendants' failure to pay Plaintiff Parker for services rendered on their behalf, Plaintiff has sustained substantial monetary losses and other consequential damages.

**COUNT IX**
**(Accounting)**

71. Plaintiff realleges and incorporates by reference paragraphs 1 through 70 of her Complaint as if fully set forth herein.

72. Parker is a shareholder of Urgent by virtue of the agreement by Halpern-Ruder to give her an equity interest.

73. Parker is entitled to review the books and records of Urgent pursuant to R.I.Gen. Laws § 7-1.1-46.

**COUNT X**
**(Violation of R.I.Gen. Laws §9-1-28 and § 9-1-28.1)**

74. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 of her Complaint as if fully set forth herein.

75. Parker left the employ of Urgent and Stat Care in December 2006.

76. Urgent has continued to use Parker's name and exploit her considerable experience and expertise on its website to solicit customers.

77. Defendants did not obtain Parker's consent prior to using her name for advertising purposes within the State.

78. Defendants knowingly and willfully used Parker's name without her consent to market Urgent's business in violation of R.I.Gen. Laws § 9-1-28.

79. Defendants' actions violated Parker's right to privacy, namely the right to be secure from an appropriation of one's name or likeness, in violation of R.I. Gen. Laws § 9-1-28.1.

80. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages and is entitled to treble damages, attorney's fees and costs.

WHEREFORE, Plaintiff, Kathleen Parker demands judgment against the Defendants, Daniel Halpern-Ruder, M.D., Urgent Medical Center of Smithfield, Inc.; Urgent Medical

Center of Cumberland, Inc. and Stat Care-Warwick Medical and seeks the following relief:

(a) compensatory damages;

(b) specific performance of the agreements to give an equity interest in Urgent Smithfield and Urgent Cumberland to Parker;

(c) order that the books and records of Urgent Smithfield, Urgent Cumberland and Stat Care be made available to Plaintiffs for inspection and copying;

(d) treble damages, liquidated damages or other exemplary damages;

(e) costs and disbursements of this action, including reasonable attorneys' fees, costs and interest; and

(f) such other and further relief as this Court deems just and appropriate.

Plaintiff,
Kathleen Parker

By her Attorney,

Thomas A. Tarro III, Esq. #2046
THE LAW FIRM OF THOMAS A. TARRO III
The Summit East - Suite 330
Centerville Road
Warwick, RI 02886
(401) 737-7200
(401) 732- 3362 (facsimile)

DATED: October 26, 2007

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE BY A JURY