UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KATHLEEN PARKER,<br>Plaintiff, | : | |
| v. | : | CA 07-401 S |
| DANIEL HALPERN-RUDER, M.D., and URGENT MEDICAL CENTER OF SMITHFIELD, INC., URGENT MEDICAL CENTER OF CUMBERLAND, INC., and WARWICK URGENT CARE PARTNERS, INC. d/b/a STAT CARE-WARWICK MEDICAL,<br>Defendants. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is Defendants' Motion to Dismiss (Doc. #6) ("Motion to Dismiss" or "Motion") pursuant to Fed. R. Civ. P. 12(b)(6). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons explained below, I recommend that the Motion to Dismiss be denied.

**Facts[1] and Travel**

Around 1997 Kathleen Parker ("Parker" or "Plaintiff") began working for Daniel Halpern-Ruder, M.D. ("Halpern-Ruder"), and Urgent Medical Center of Smithfield, Inc. ("Urgent Smithfield"), as a registered nurse practitioner. Her primary responsibilities were focused on managing, soliciting, and serving occupational health services clients. Parker was also responsible for training nurse practitioners in performing pre-employment physicals, drug screenings, immunizations, and other occupational

[1] Unless otherwise indicated, the facts are taken from the Complaint.

health services.

Around 2001, Halpern-Ruder offered Parker an equity interest in Urgent Smithfield if she would work as his employee, developing, servicing, and managing the occupational health side of the business for five years and working to expand its general business.[2] Parker accepted Halpern-Ruder's offer and worked for Urgent Smithfield for the next five years. When Halpern-Ruder opened another facility, Urgent Medical Center of Cumberland, Inc. ("Urgent Cumberland"),[3] he extended and reiterated his agreement to give Parker an equity interest in both Urgent Smithfield and Urgent Cumberland (collectively "Urgent") if she continued her employment. Parker alleges that in reliance on this renewed agreement, she continued to work for Urgent "for the ensuing years ...." Complaint ¶ 11.

Annually, in the spring of each year that she was employed by Urgent, Parker discussed her compensation and the agreement to give her an equity interest in Urgent's business in exchange for her continued services with Halpern-Ruder. Halpern-Ruder refused to give Parker her equity interest, citing financial constraints. However, in each discussion he confirmed and renewed his agreement to give Parker an equity interest in Urgent if she continued to manage, service, and develop the occupational health

---

[2] The Complaint does not state specifically when Halpern-Ruder first offered Parker an equity interest. See Complaint ¶¶ 8-9. However, Plaintiff states that after accepting Halpern-Ruder's offer she worked for Urgent Medical Center of Smithfield, Inc. ("Urgent Smithfield"), "for the next five years ...," Complaint ¶ 9, and that she terminated her employment with Urgent Smithfield and Urgent Medical Center of Cumberland, Inc. ("Urgent Cumberland") (collectively "Urgent"), and Warwick Urgent Care Partners, Inc. d/b/a Stat Care-Warwick Medical ("Stat Care") in October 2006, see id. ¶ 20. Thus, by subtracting five years from the year of her termination, the Court infers that the offer was made around 2001.

[3] The Complaint does not indicate the year in which Urgent Cumberland was opened.

services business and other aspects of Urgent's business.

Plaintiff alleges that, in reliance upon Halpern-Ruder's statements that her efforts were accruing equity in Urgent's business, she did not pursue more lucrative employment activities, did not take her allotted vacation time, sick time, or personal time, and worked substantial overtime for no compensation. Apart from her first year of employment, Parker received an hourly wage for a forty hour week as compensation for various nursing, management, and administrative services which she performed for the benefit of Halpern-Ruder and Urgent. Although Parker requested overtime for the substantial number of hours which she worked in excess of forty hours per week, Halpern-Ruder consistently and repeatedly refused her requests.

Parker terminated her employment with Urgent and Stat Care in October 2006, but remained on staff until December 2006. She filed this action against Halpern-Ruder, Urgent and Stat Care ("Defendants") in October 2007, alleging that she worked substantial hours in excess of forty per week for which she was not paid compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA") (Count I). In addition, Parker asserts claims against Defendants for breach of contract based on the promise to give her an equity interest in Urgent's business (Count II), estoppel (Count III), breach of an implied covenant of good faith and fair dealing (Count IV), fraudulent inducement (Count V), specific performance (Count VI), unjust enrichment (Count VIII), and for an accounting (Count IX) because of their failure to give her an equity interest in Urgent. Parker also asserts another breach of contract claim because of Defendants' alleged failure to properly fund and qualify a 401k plan which was a term of her employment with Urgent (Count VII). Lastly, Parker asserts that Urgent has continued to use her name on its website without her consent in

violation of R.I. Gen. Laws § 9-1-28 and 9-1-28.1 and that such action violates her right of privacy, specifically the right to be secure from an appropriation of one's name or likeness (Count X).

Defendants filed their Motion to Dismiss on November 16, 2007. A hearing on the Motion was held on December 19, 2007. Thereafter, the Motion was taken under advisement.

**Standard of Review**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the stated facts in the light most favorable to the pleader, In Re Credit Suisse First Boston Corp., 431 F.3d 36, 51 (1st Cir. 2005); see also Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the pleader the benefit of all reasonable inferences that fit the pleader's stated theory of liability, Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005); see also Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995); Hart v. Mazur, 903 F.Supp. 277, 279 (D.R.I. 1995); see also Arruda v. Sears, Roebuck & Co., 310 F.3d at 18 ("[W]e will affirm a Rule 12(b)(6) dismissal only if 'the factual averments do not justify recovery on some theory adumbrated in the complaint.'")(citation omitted).[4] The Court, however, is not

[4] Plaintiff in her memorandum states that "[t]he complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief." Memorandum in Support of Plaintiff's Objection to Defendants' Motion to Dismiss ("Plaintiff's Mem.") at 2-3. However, this observation from Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct.

required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006)(internal quotation marks omitted); see also Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d at 5 (same). Rule 12(b)(6) is forgiving, see Campagna v. Mass. Dep't of Envtl. Prot., 334 F.3d 150, 155 (1st Cir. 2003), but it "is not entirely a toothless tiger," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (quoting Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 67 (1st Cir. 2004)(quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989))). A plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." Campagna v. Mass. Dep't of Envtl. Prot., 334 F.3d at 155.

## Discussion

### I. FLSA (Count I)

Defendants contend that under the FLSA and applicable regulations a registered nurse practitioner is not governed by the statute. In support of this argument, Defendants note that Plaintiff alleges that she performed "'various nursing, management[,] and administrative services' for Defendants," Defendants' Memorandum in Support of Their Motion to Dismiss ("Defendants' Mem.") at 3 (quoting Complaint ¶ 14), and that 29 U.S.C. § 213 states that the FLSA does not apply to "any employee

---

99, 102 (1957), on which Plaintiff relies, see Plaintiff's Mem. at 2-3 (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)), has been abrogated by Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1969 (2007)("Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough"); id. ("this famous observation has earned its retirement"); see also ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008)("The Supreme Court has recently altered the Rule 12(b)(6) standard in a manner which gives it more heft. In order to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'")(quoting Bell Atl., ___ U.S. at ___, 127 S.Ct. at 1967).

employed in a bona fide executive, administrative or professional capacity," id. (quoting § 213). Defendants additionally cite 29 C.F.R. § 541.304 which states in part that:

> In the case of medicine, the exemption [in § 213(a)(1)] applies to physicians and other practitioners licensed and practicing in the field of medical science and healing or any of the medical specialties practiced by physicians or practitioners.

29 C.F.R. § 541.304(b). In further support of their argument, Defendants note that "[a] registered nurse practitioner has certification requirements beyond those required of registered nurses or practical nurses and has greater privileges than P.N.'s or R.N.'s." Defendants' Mem. at 3 n.2 (citing R.I. Gen. Laws § 5-34-39 and § 5-34-1 et seq.).

Plaintiff responds that the "professional capacity" exemption provided by Section 213(a)(1) is not applicable unless the employee meets both the "duties" test and the "salary" test stated in 29 C.F.R. § 541.300(a)[5] and that Plaintiff does not

---

[5] 29 C.F.R. § 541.300(a) provides:

> (a) The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging, or other facilities; and
>
> (2) Whose primary duty is the performance of work:
>
> > (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
> >
> > (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

meet the salary test to fall within the exemption. See Plaintiff's Mem. at 3. Plaintiff is correct. See Powell v. Am. Red Cross, 518 F.Supp.2d 24, 38 (D.D.C. 2007)("To prove that the exemption applies, the employer must show that the position in question satisfies both the salary and the primary duty tests."); see also Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 364 (M.D. Ala. 1999)("Both the particular job skills required and the salary paid are taken into account in evaluating whether an employee works in a professional capacity and whether, therefore, the employer can qualify for the professional exemption.").

Plaintiff acknowledges that there is an exception to the salary requirement for the practice of law or medicine which is contained in 29 C.F.R. § 541.304, but asserts that the exemption in that section is intended to encompass the practice of medicine and not registered nurse practitioners. See Plaintiff's Mem. at 4. Plaintiff notes that the legislative history of the 2004 revisions to regulations 541.304 and 541.600 indicates that the Department of Labor ("DOL") specifically declined "to 'expand the original, limited number of professions that were not subject to the salary test' to include registered nurses and others." Id. (quoting 69 Fed. Reg. 22,122, 22,172 (Apr. 23, 2004)). The Court notes that the DOL made this decision notwithstanding the fact that the "others" included pharmacists who "complete a doctoral program before they are licensed to practice."[6] 69 Fed. Reg.

---

29 C.F.R. § 541.300(a).

[6] In explaining its decision, the DOL stated:

> In the Department's view, pharmacists can qualify, along with doctors, teachers, lawyers, etc., as professionals under the FLSA exemption. However, the fact that the standards for the profession are rising does not mean that the minimum salary requirement to be exempt should be removed.

69 Fed. Reg. 22,122, 22,172 (Apr. 23, 2004).

22,122, 22,172 (Apr. 23, 2004).

Surprisingly, there is scant law on the question of whether nurse practitioners qualify for the professional exemption to the overtime requirements of the FLSA. The Fifth Circuit, the only circuit which has considered the matter, found that the regulation interpreting the professional exemption, 29 C.F.R. § 541.3 (1973),[7] did not speak to this precise question and that the DOL's informal interpretative statements excluding nurse practitioners from the exemption merited deference under Auer v. Robbins, 519 U.S. 452, 117 S.Ct. 905 (1997). See Belt v. Emcare, Inc., 444 F.3d 403, 405 (5th Cir. 2006); see also id. at 412 (finding regulation § 541.3 ambiguous and looking to the DOL's interpretative statements for additional guidance); id. at 416 (explaining that because § 541.3 is ambiguous, controlling weight is given to DOL opinion letter). In explaining its decision, the Belt court wrote:

> Not only is the agency in a better position to determine when a salary is necessary to identify a professional: the agency is also better placed to make the calibrated policy judgment that [physician assistants] and [nurse practitioners],[8] despite higher barriers to entry and the increasing sophistication of their practice, are nascent professions in need of the FLSA's protection against the threat of "the evil of overwork as well as underpay."

Belt v. EmCare, Inc., 444 F.3d at 417 (quoting 81 Cong. Rec. 4983 (1937)).

This Court finds the analysis in Belt persuasive and rejects Defendants' arguments that the case is distinguishable because it

---

[7] Section 541.3 is a predecessor of the current 29 C.F.R. § 541.304.

[8] The plaintiffs in Belt were physician assistants and nurse practitioners. Belt v. Emcare, Inc., 444 F.3d 403, 405 (5th Cir. 2006).

involves an earlier version of the regulation[9] and alludes to Texas law.[10] The key language in the regulation being considered in Belt is sufficiently close to the language in the current § 541.304(b) to render the case instructive, and the holding is not dependent on Texas law.

Accordingly, I find that Defendants have not met their burden of proof of establishing an exemption. See De Jesús-Rentas v. Baxter Pharmacy Servs. Corp., 400 F.3d 72, 74 (1st Cir. 2005)("The employer in an FLSA case bears the burden of establishing that its employees are exempt, and because of the remedial nature of the FLSA, exemptions are to be narrowly construed against the employers seeking to assert them ....") (quoting Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1070 (1st Cir. 1995))(alteration in original); see also Cowan v. Tricolor, Inc., 869 F.Supp. 262, 264 (D. Del. 1994)("[T]he burden of proof is on the employer to establish an exemption."). Therefore, to the extent that the Motion seeks to dismiss Plaintiff's FLSA claim, it should be denied, and I so recommend.

**II. Statute of Frauds (Counts II, III, IV, V, VI, VIII, and IX)**

In paragraph 8 of her Complaint, Plaintiff alleges that Halpern-Ruder offered her an equity interest in Urgent Smithfield if she would work as his employee for five years. Complaint ¶ 8. Defendants cite the Rhode Island Statute of Frauds,[11] and assert

---

[9] The precise regulation at issue in Belt was 29 C.F.R. § 541.3(e) (1973). See Belt v. Emcare, Inc., 444 F.3d at 406 (noting that defendant contended "that it did not owe plaintiffs additional pay, because they qualif[ied] for an exception as *bona fide* professionals under 29 C.F.R. § 541.3(e) (1973).").

[10] See, e.g., Belt, 444 F.3d at 412 (noting that nurse practitioners do not qualify to "practice medicine" under Texas law).

[11] The Rhode Island Statute of Frauds, R.I. Gen. Laws § 9-1-4, provides, in relevant part, that "No action shall be brought ... to charge any person upon any agreement which is not to be performed within the space of one year from the making thereof ... unless the

that "[b]ecause that contract could not possibly be performed within the space of one year, the Plaintiff cannot maintain an action based on that alleged oral contract." Defendant's Mem. at 4-5; see also Ferrera v. Carpionato Corp., 895 F.2d 818, 820 (1st Cir. 1990)("The Rhode Island Statute of Frauds bars any action based on an agreement that cannot be performed within one year from the date of its making, unless the essential terms of the agreement (or a memorandum discussing the agreement) are in writing and the agreement is signed by the defendant or one of his agents.")(citing R.I. Gen. Laws § 9-1-4 (1985 Reenactment)); Kass v. Ronnie Jewelry, Inc., 371 A.2d 1060, 1062 (R.I. 1977) (finding oral employment contract which could not be performed within one year from the date of its making to be within the statute of frauds).

Plaintiff responds that the agreement to give her an equity interest in Urgent if she continued her employment was confirmed and renewed by Halpern-Ruder annually. See Plaintiff's Mem. at 6. Thus, Plaintiff argues that in the last year of her employment the agreement was capable of being performed within one year and falls outside the statute of frauds. See id. Plaintiff additionally argues that no discovery has been taken and that it is unknown whether Defendants will admit to the agreement. See id. at 6-7 (citing Adams-Riker, Inc. v. Nightingale, 383 A.2d 1042, 1045 (R.I. 1978))(rejecting Statute of Frauds defense where defendant admitted to the existence and terms of the contract in both his answer to the complaint and in his courtroom testimony); see also id. (citing Smith v. Boyd, 553

---

promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith ...." R.I. Gen. Laws § 9-1-4 (1997 Reenactment) (2007 Supplement).

A.2d 131, 133 (R.I. 1989))(stating that the purpose of the statute of frauds is to prevent perjurious claims, but "to allow the statute to excuse a party's performance, when such party admits all elements essential to a valid contract, ... would create an injustice").

At the hearing, Defendants' counsel appeared to argue that Plaintiff alleges only the existence of a single contract which required five years of employment and that because that contract could not be performed by Plaintiff within five years it was barred by the Statute of Frauds. The Court does not read Plaintiff's Complaint so restrictively. In addition to the original offer by Halpern-Ruder (which Plaintiff accepted), see Complaint ¶¶ 8-9, Plaintiff also alleges that in the spring of each year Halpern-Ruder renewed his agreement to give her an equity interest in Urgent "if she continued to manage, service[,] and develop the occupational health services business and the other aspects of Urgent's business," id. ¶ 16. The Complaint does not definitively state when Halpern-Ruder first made the offer to Parker of an equity interest.[12] It is possible that the offer was first made in October 2001. If so, this would mean that in the spring of 2006, when Halpern-Ruder "confirmed and renewed his agreement ...," id., Plaintiff only needed to continue her employment for an additional six months in order to satisfy that particular offer (as opposed to the prior offers), see id. ¶ 16. Therefore, this contract (made in the spring of 2006) could be fully performed by Plaintiff in less than one year and would not be barred by the Statute of Frauds. Cf. Biggens v. Hazen Paper Co., 953 F.2d 1405, 1418 (1st Cir. 1992)("for an employee to remain with an employer can, in appropriate circumstances, supply adequate consideration for employment

[12] See n.2.

contract")(applying Massachusetts law), vacated on other grounds by Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S.Ct. 1701 (1993)).

At this point in the litigation, where no discovery has been done and where Plaintiff enjoys the benefit of Fed. R. Civ. P. 12(b)(6)'s liberal standards, the Court concludes that Plaintiff has alleged "a plausible entitlement to relief," ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1967-69 (2007)), which is not barred by the Statute of Frauds. Accordingly, to the extent that Defendants seek dismissal of Counts II, III, IV, V, VI, VIII, and IX based on that statute, the Motion to Dismiss should be denied.[13] I so recommend.

---

[13] The Complaint does not specify any percentage of equity which Halpern-Ruder allegedly promised to transfer to Parker. See, e.g., Complaint ¶ 60 (stating that "Defendants must be required to transfer ___ per cent equity interest in Urgent to Parker."). This omission raised a question in the Court's mind as to whether the agreement was too vague and uncertain to constitute an enforceable contract. See Jordan-Milton Mach., Inc. v. F/V Teresa Marie, II, 978 F.2d 32, 35 (1st Cir. 1992)("contract terms must be reasonably certain so as to enable a court to establish the existence of a breach and fashion a remedy therefrom")(quoting Restatement (Second) of Contracts § 33 (1981)); see also Rhode Island Hosp. Trust Nat'l Bank v. Howard Commc'ns Corp., 980 F.2d 823, 827 (1st Cir. 1992)("The appropriate inquiry is whether the omitted term is *material, i.e.*, whether its omission renders the guaranty 'too vague and uncertain to constitute an enforceable contract'")(quoting Jordan-Milton Mach., 978 F.2d at 35); Ferrera v. Carpionato Corp., 895 F.2d 818, 822 (1st Cir. 1990)(holding that the absence of any stated percentage in the project participation and bonus sections of a draft employment agreement "constituted the omission of a material substantive term").

After further research and consideration, the Court concluded that the failure of Plaintiff to allege a specific percentage (or other amount) of equity was not fatal, at least for purposes of deciding the instant 12(b)(6) Motion. Cf. Biggens v. Hazen Paper Co., 953 F.2d 1405, 1418 (1st Cir. 1992)("We think that the issue of whether [defendant's] alleged offer of stock was sufficiently definite was a question of fact, which the jury could properly resolve in favor of [plaintiff].")(citing Massachusetts law), vacated on other grounds by Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S.Ct. 1701 (1993)); id. ("where a contract is oral, the question of what the contract is must,

In addition, as Plaintiff observes,[14] the Statute of Frauds does not operate as a bar to Plaintiff's related claims for breach of implied covenant of good faith and fair dealing (Count IV), fraud (Count V), and unjust enrichment (Count VIII). See Bourdon's Inc. v. Ecin Indus., Inc., 704 A.2d 747, 757 (R.I. 1997)("[W]e hold explicitly ... that § 9-1-4 is inapplicable to a claim of misrepresentation, fraud, and or deceit ...."). Thus, to the extent that the Motion seeks dismissal of Counts IV, V, and VIII, it should be denied for this additional reason. I so recommend.

**III. Promissory Estoppel (Count III)**

Defendants also move for dismissal of Parker's estoppel claim (Count III), arguing that there is a substantial body of case law which holds that the doctrine of promissory estoppel cannot be used to defeat the statute of frauds. However, in the context of an alleged oral employment agreement, Rhode Island law is to the contrary. See Demirs v. Plexicraft, Inc., 781 F.Supp. 860, 864 (D.R.I. 1991)(refusing to "grant summary judgment to defendant on the grounds of Statute of Frauds, since it remains to be seen whether or not plaintiff will successfully invoke the

---

if controverted, be tried by a jury as a question of fact ...") (footnote omitted); Mayo v. Schooner Capital Corp., 825 F.2d 566, 568-69 (1st Cir. 1987)(noting that plaintiff had alleged in his complaint that he was to receive seemingly inconsistent percentages of equity pursuant to oral employment contract and had surrendered that claim only at trial); Newell v. Anchor Webbing Co., 129 A. 264, 266 (R.I. 1925)(rejecting defendant's argument that court had duty to construe the legal meaning of oral contract to convey interest in business and as a result to direct a verdict on grounds of indefiniteness); but see Turcott v. Gilbane Bldg. Co., 179 A.2d 491, 492, 493 (R.I. 1962) (finding that superior court was warranted in holding allegations in complaint that plaintiff was to receive "a fair and equitable share of the profits, fees and earnings of the [defendant] corporation resulting from [plaintiff's] efforts ..." was "too vague, indefinite, ambiguous, and insufficient to form the basis for an accounting.").

[14] While Plaintiff's memorandum was generally helpful, her failure to provide in several instances pinpoint citation was a hindrance.

doctrine of equitable estoppel to bar [defendant's] Statute of Frauds defense"); see also Lago & Sons Dairy, Inc. v. H.P. Hood, Inc., 892 F.Supp. 325, 334 (D.N.H. 1995)("if [plaintiff] can prove all of the essential elements of equitable estoppel, then the doctrine will operate to bar [defendant]'s Statute of Frauds defense")(citing Demirs, 781 F.Supp. at 863-64); cf. Greenwich Bay Yacht Basin Assocs. v. Brown, 537 A.2d 988, 991 (R.I. 1988) ("Our prior cases recognize the doctrine of equitable estoppel and the fact that said doctrine may be applied to a governmental authority as well as a private party when appropriate circumstances and principles of equity require.").

Defendants cite this Court's decision in Siesta Sol, LLC v. Brooks Pharmacy, Inc., C.A. No. 05-401S, 2007 WL 2377044 (D.R.I. Aug. 16, 2007), as supporting its contention that promissory estoppel cannot be used to overcome the statute of frauds defense. See Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss ("Defendants' Reply") at 1. However, in Siesta Sol, the Court noted that "[m]any of the courts which have refused to allow promissory estoppel to circumvent the Statute of Frauds have done so in the context of commercial transactions involving the sale of goods," Siesta Sol, LLC v. Brooks Pharmacy, Inc., 2007 WL 2377044 at *11, and that the alleged oral contract in Siesta Sol was "for the sale of goods," id. at *12. The Court went on to "conclude[] that the state supreme court would hold that promissory estoppel is not available to defeat a defense based on the statute (R.I. Gen. Laws § 6A-2-201) **in cases involving the sale of goods between merchants**." Id. at *13 (bold added). Thus, the holding in Siesta Sol was specifically limited to such cases.

Here Parker has pled all the elements for her estoppel claim. She has alleged that in the spring of each year Halpern-Ruder confirmed and renewed his agreement to give her an equity

interest in Urgent if she continued to manage, service, and develop the occupational health services business and other aspects of Urgent's business. Complaint ¶ 16; see also Demirs, 781 F.Supp. at 864 (stating first element of estoppel as "an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon"). Parker further alleges that in reliance upon Halpern-Ruder's continued promises and agreements, she did not seek more lucrative employment elsewhere and did not pursue additional benefits from Urgent, but continued to work for Urgent and Stat Care with the understanding that her efforts were accruing equity in the business. Complaint ¶ 17; see also Demirs, 781 F.Supp. at 864 (stating second element of estoppel: "that such representation or conduct in fact did induce the other to act or fail to act to his injury").

Accordingly, the Motion should be denied as to Count III. I so recommend.

**IV. State Law Claims (Count VII [15] and X)**

Defendants argue that these state law claims should be dismissed upon dismissal of the count alleging noncompliance with the FLSA and dismissal of counts controlled by the statute of frauds. However, as the Court has concluded that the FLSA claim should not be dismissed and that Plaintiff's contract claims are not, at this early juncture, barred by the Statute of Frauds, there is no reason for the Court to dismiss these related state law claims. Accordingly, the Motion should be denied as to Counts VII and X. I so recommend.

---

[15] Defendants have included Count VII as being among Plaintiff's state law claims. The Court is not entirely persuaded that the claim is strictly a state law claim. However, for purposes of this section, the Court will assume that Count VII is also a state law claim as Defendants contend.

## Conclusion

For the reasons stated above, I recommend that Defendants' Motion to Dismiss be denied. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days[16] of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 27, 2008

[16] The ten days do not include intermediate Saturdays, Sundays, and legal holidays. See Fed. R. Civ. P. 6(a).